UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V.  ) | No. 1:21-CR-00051 MSM |
| ) | |
| JIANGUANG GUO ) | |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge

    Mr. Guo has moved to suppress the seizure of four hundred seventy-four marijuana plants and approximately thirty-one pounds of processed marijuana, seized from 67 Maywood Avenue on December 6, 2020. (ECF No. 22.) The materials were seized pursuant to a warrant issued on November 30, 2020. On the basis of the search, Mr. Guo, whose car registration established that he lived at 67 Maywood Avenue, was indicted for unlawful manufacturing of one hundred or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (ECF No. 16.) Mr. Guo argues that the search warrant lacked probable cause, specifically because the Affidavit relied in part on information furnished by a confidential informant ("CI") who was insufficiently vetted and because the affidavit generally failed to state probable cause.

Probable cause "to issue a search warrant exists when given all the circumstances set forth in the affidavit supporting the warrant there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Keene*, 341 F.3d 78, 81 (1st Cir. 2003). Information obtained from a confidential source can be used to establish probable cause if the totality of the circumstances warrant reliance on it. Among those circumstances are the source's credibility/veracity and reliability, and the basis of the informant's purported knowledge. *Illinois v. Gates,* 462 U.S. 213, 230 (1983). "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. Courts may look at "whether an informant's statements reflect firsthand knowledge" as well as whether such statements are verified by law enforcement. *United States v. Tiem Trinh*, 665 F.3d 1, 10-11 (1st Cir. 2011). *See also United States. v. Keene,* 341 F.3d at 81 ("…[F]actors to be considered in determining whether a search warrant is supported by probable cause include 'the value of corroboration of details of an informant's tips by independent police work.'") (quoting *Gates,* 462 U.S. at 241). A particularly significant factor in assessing reliance on an informant is whether the informant's information has been corroborated in the past. *Keene,* 341 F.3d at 82 (information provided by four informants corroborated over a ten-year period).

Mr. Guo was caught up in a much larger investigation that had been ongoing in some measure since 2017. The Drug Enforcement Administration ("DEA") had been investigating what it believed was a large-scale illegal marijuana

2

manufacturing scheme and had, before the search relevant here, conducted multiple searches of properties with connections to an operation it termed "FANG DTO" across Rhode Island. Twenty-five searches had been conducted in 2017 and 2018, and an additional 18 more were conducted between 2018 and 2020. According to the Affidavit, every searched property had yielded either unlicensed marijuana plants, marijuana growing equipment, or some combination of both.

Issued on November 30, 2020, and signed by DEA agent Alan Sims, the warrant to search 67 Maywood Avenue was supported by an affidavit that also sought to justify searches of 11 other residential properties. As it related to Mr. Guo, it alleged the following:[1]

- That a gold Sienna, license plate XT-444, registered to Mr. Guo, was tracked at both Maywood Avenue and Generation Grow, a marijuana cultivation center, and that the informant had a corroborated history of correctly identifying vehicles entering Generation Grow. (ECF No. 25-1, at 6-8)[2]

- That the DEA had identified a large-scale trafficking operation, referred to as FANG DTO, involving multiple locations in Rhode Island, including Maywood Road, and resulting in previous, warranted seizures of large amounts of marijuana. *Id.* at 10-11. The previous seizures were identified in detail by address. *Id.* at 11-15.

- That each targeted location, which included Maywood Avenue, had "common modifications which supported the manufacture of marijuana." *Id.* at 16. This included the air conditioning and lighting systems, insulation, and venting, etc. *Id.* Mr. Guo's gold Sienna, at that time driven by a man identified as Darong Chen, had picked up many wall-mounted vans which, the affidavit

---

[1] The Affidavit also attests to the experience of the affiant as a decade-long DEA agent with previous law enforcement experience. It describes what he contends are common practices of drug traffickers and details what agents found at 67 Maywood Avenue that were similar to those practices. (ECF No. 25-1, ¶¶ 2-4).

[2] Unless otherwise indicated, the page numbers are internal to the affidavit.

3

- alleged, "have been seen at every indoor grow location that has been searched." *Id.* at 48. Chen's account at Generation Grow was, according to the affidavit, used to purchase grow equipment by a number of unknown Asian males. *Id.* at 46. The affidavit provided details indicating that one of the several properties Chen owned, "was used primarily, if not solely, for purposes of indoor marijuana cultivation." *Id.* at 48.
- Chen had also used Mr. Guo's vehicle to purchase 2,000 "grow blocks" and approximately $2,000 worth of "grow chemicals, numerous oscillating fans, air filters, electrical controllers, and potting saucers." *Id.* at 65. The material was taken to 67 Maywood Avenue. *Id.* at 66.
- Agents identified a strong odor of marijuana emanating from 67 Maywood Ave. They alleged that various features of the residence indicated large scale marijuana cultivation, including ductwork, a large number of air conditioning units, windows covered with plywood or opaque materials, and an air intake system.
- Finally, a recent monthly utility bill for 67 Maywood was more than 17 times that of a typical residence that size with oil heat and no central air conditioning, thus indicating to the agents an enormous amount of unit air conditioning needed to moderate the heat generated by a large grow operation.

The confidential informant was the one who linked vehicles to individuals and locations where large-scale marijuana cultivation had occurred. (ECF No. 25, at 7.) The informant also provided the agent with the information about Generation Grow where quantities of grow supplies were purchased. *Id.* at 8. Contrary to the defendant's assertions, the link between the defendant and the grow activities was not simply race. He owned a vehicle that transported large quantities of grow supplies, and he resided at a house that was outfitted consistent with its use as an large-scale indoor grow center. That knowledge plus the allegations specifically made by the confidential informant satisfies the Court that the criteria of *Illinois v. Gates* have been met. The affidavit establishes at length the personal knowledge the informant purported to have, and a significant number of times the information had been borne out about individuals, their movements, and their purchases. In addition, the information the agent learned from their independent surveillance of Mr. Guo's

home was consistent with the informant's allegation of large-scale marijuana cultivation.

The Court finds that the warrant issued by Magistrate Judge Lincoln D. Almond was supported by probable cause. It therefore DENIES the defendant's Motion to Suppress the evidence seized on the basis of that warrant. (ECF No. 22.)

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge

May 2, 2023